ZIBILICH v. RITTENBERG

———

(January 11, 1932. Opinion and Decree.)

———

Hugh Morrison and James N. Brittingham, Jr., of New Orleans, attorneys for plaintiff, appellee.

Rittenberg & Rittenberg, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. Plaintiff brings this action against the defendant to recover the sum of $1,000 paid by him to the defendant as surety for the Orpheum Restaurant on a lease between the defendant, as lessor, and the restaurant, as lessee, of the premises 1015 Common street. Plaintiff alleges that he is entitled to the return of $1,000, first, because the defendant, after having collected the $1,000 from him, also collected rent for the months of January and February, at the rate of $250 a month, and therefore was paid $500 twice, first by plaintiff and second by the Orpheum Restaurant. Secondly, plaintiff alleges that he is entitled to the return of the money in question because the defendant destroyed plaintiff's rights of subrogation, which the law vested in him as surety, when he paid defendant the $1,000, by defendant's action in suing the Orpheum Restaurant, subsequently, for the cancellation of the lease as of March 1, 1929.

Defendant in his answer denied that he had been paid twice for the months of January and February, 1929, and that he had done anything to impair any of the plaintiff's rights of subrogation, and specially pleaded that plaintiff had paid the defendant the sum of $1,000 under a valid written compromise agreement dated February 5, 1929, which is an effectual bar to plaintiff's right of recovery. Defendant also specially pleaded that the plaintiff had entered into a voluntary compromise agreement and paid the $1,000 to defendant, and, even if it be said that the money was paid through error of law, as the agreement of compromise and payment were made for the purpose of ending litigation, that the plaintiff is not entitled to recover the same.

There was judgment in favor of the plaintiff, as prayed for, and the defendant has appealed.

Practically all of the facts of the case are admitted, most of the evidence being in documentary form.

It appears that on January 14, 1926, defendant leased the premises No. 1015 Common street to the Orpheum Restaurant, a

partnership composed of Matt Zibilich and Anthony Zanki for 48 months, beginning October 1, 1926, and ending September 30, 1930, at a rental of $250 a month payable in advance. The Orpheum Restaurant furnished 48 rent notes payable on the first of each month and the notes and the lease both provided that failure to pay any one of the notes at maturity should ipso facto mature the entire series of notes. In connection with the lease the partners composing the Orpheum Restaurant made a promissory note for the sum of $1,000, payable to the order of defendant on demand after date, bearing interest at the rate of 8 per cent per annum from date until paid and 10 per cent attorney's fee for collection. This note was endorsed by the plaintiff and delivered to the defendant, as lessor, in order to secure the faithful performance of the lease. The restaurant failed to pay the rent due on January 1 and February 1, 1929, and, on February 4, 1929, the defendant herein, as lessor, filed a suit against the Orpheum Restaurant and the partners for the accrued rental and the rental due under the acceleration clause of the lease, being twenty-one months' rent, amounting to $5,250, plus 8 per cent interest and 10 per cent attorney's fee, and also against the plaintiff herein for the sum of $1,000, plus 8 per cent interest and 10 per cent attorney's fee, as endorser of the $1,000 note.

On February 5, 1929, after plaintiff herein had been served with a citation in the above suit, he offered the defendant herein $1,000 in settlement of his obligations as an endorser on the note and the defendant herein, as lessor, through his attorney, accepted the money and issued the following receipt:

"February 5, 1929.
"Received $1,000.00 from Mr. George D. Zibilich in full payment of Joseph Rittenberg's claim against George D. Zibilich on note for $1,000.00 endorsed by said George D. Zibilich as security for rental of premises #1015 Common Street.
"(Sgd) Joseph Rittenberg.
"By Philip D. Rittenberg
"Attorney."

Having received the $1,000 from Mr. Zibilich, plaintiff herein, Joseph Rittenberg, defendant herein, had the suit discontinued.

Thereafter, on February 8, 1929, Rittenberg, as lessor, filed another suit against the Orpheum Restaurant and the partners composing the partnership, in solido, for the sum of $500, plus 10 per cent attorney's fee and interest, representing the rent for the months of January and February, 1929, and for recognition of his lessor's lien. Judgment was rendered as prayed for and a writ of provisional seizure was made of the movable property of the Orpheum Restaurant in the premises No. 1015 Common street. These effects were seized and sold by the civil sheriff and, after deducting costs, expenses and sheriff's commission, Rittenberg, as lessor, received $287.40 from the proceeds of the sale. During May, 1929, Rittenberg, as lessor, accepted from the partners of the restaurant the sum of $150 in settlement and compromise for the balance due him under the judgment against the restaurant and the two members of the partnership.

On October 14, 1929, George D. Zibilich, plaintiff herein, filed the present suit against Joseph Rittenberg, defendant herein, to recover the sum of $1,000 paid by him to Rittenberg on February 5, 1929.

The plaintiff contends that his settlement with the defendant, as lessor, was a payment in full of all of his obligations as endorser on the note; that the $1,000, which he paid to the lessor, defendant herein, was to pay the rent for the months

of January, February, March and April 1929, at the rate of $250 a month; that, as the defendant subsequently dismissed his original suit against the Orpheum Restaurant and thereafter sued for the accrued rental for the months of January and February, or $500, and succeeded, through the judgment of court, in collecting or settling with the Orpheum Restaurant, Rittenberg, as lessor, had been paid the rent twice for the months of January and February, and, consequently, plaintiff was entitled to recover $500 of the $1,000 which went to pay the rent for those two months. Plaintiff further contends that, in the second suit, by Rittenberg as lessor, against the Orpheum Restaurant and the partners individually for accrued rentals for the months of January and February, amounting to the sum of $500, he also prayed that the lease be rescinded and cancelled and that he, as lessor, be restored to possession of the leased premises as of March 1, 1929, and, hence, plaintiff herein was entitled to recover the other $500 of the $1,000, because Rittenberg had accepted this $500 for the rent for the months of March and April, and, as he was restored to possession by virtue of the judgment, had not earned it and was not legally entitled to retain the money, and, finally, that the second suit destroyed his rights as subrogee, for which the lessor is responsible.

Defendant herein, Rittenberg, argues that the status of the affair must be considered as of the time that the $1,000 was paid to him by Zibilich, plaintiff herein, and not by what subsequently happened, because the rights and obligations between Rittenberg and Zibilich were compromised and settled on February 5, 1929, upon the payment of the $1,000; that the $1,000 was not in payment of either the accrued rent or unearned rent for the months of January, February, March and April, respectively, as Zibilich was an endorser on the note held as collateral security, and, therefore, there were not any particular months for which he could claim that he was responsible; that the consideration for the payment of the $1,000 was not the rental due defendant, as lessor, but the release of the plaintiff, Zibilich, as an endorser on the note held as collateral security and the dismissal of the suit as against Zibilich.

It would appear to us that the crux of the case is whether or not the payment of the $1,000 by Zibilich to Rittenberg was a compromise agreement, or a settlement in full by Zibilich as a surety on the lease, with subrogation.

Articles 3071, 3076 and 3078 of the Revised Civil Code read as follows:

"3071. A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

"This contract must be reduced into writing."

"3076. The creditor who transacts with the surety of his debtor, may discharge the surety only, and the transaction will not diminish his right against the debtor. But if it is with the debtor himself that he has transacted, the surety will likewise have the benefit of the transaction, because his obligation is only an accessory to that of the principal debtor."

"3078. Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected."

See, also, article 1846, R. C. C.

In the case of Young v. Glynn, 171 La. 372, 131 So. 51, 52, in deciding in favor of the defendant, who pleaded compromise to a compensation suit, the Supreme Court said:

"* * * It is clear that in every compromise there must be uncertainty and therefore error on the part of both parties as to what may be due, otherwise there would be no ground for compromise."

Now, from the record it appears that on February 5, 1929, defendant, Rittenberg, as lessor, held a note for $1,000 dated January 14, 1926, bearing 8 per cent interest from date until paid and 10 per cent additional as attorney's fee for collection, and that suit had been instituted on this note in connection with the rent notes and lease, and citation had been served upon Zibilich. Apparently not desiring to contest the matter, he offered the sum of $1,000 in settlement of his obligation as an indorser on the note, and was given a receipt in writing, as hereinabove set forth. Prompted by this payment of $1,000, Rittenberg discontinued the original suit against the lessee and Zibilich, as indorser on the note. But the settlement as between Zibilich and Rittenberg clearly did not have the effect of releasing the Orpheum Restaurant and the two partners composing it from their liability for the balance of the rent that was due, nor deprive Rittenberg, as lessor, of his lessor's lien and privilege to secure the balance of the rent that was due him. It is also well settled that, where a lease contains a clause to the effect that failure of the lessee to pay one month's rent promptly when due automatically matures the rent covering the unexpired portion of the lease, when such a default occurs the provision of the lease is binding and effective against the lessee. Redline v. Snodgrass, 8 La. App. 19. So that, at the time that the $1,000 was paid by Zibilich to Rittenberg, there was due Rittenberg the sum of $5,250, plus 8 per cent interest and 10 per cent attorney's fees.

Counsel for Zibilich, realizing that payment of a $1,000 would not be a payment in full of the note for that sum plus about three years' interest and attorney's fees, in the present suit, sought to show that Zibilich did not receive any notice of default by the Orpheum Restaurant and that the lessor's letters making demand upon Zibilich had been mailed to the address of one of his relatives and that he had not received it. From this circumstance counsel argues that Zibilich did not owe interest, attorney's fee, and costs of court, since Rittenberg had failed to make amicable demand upon Zibilich. Upon this hypothesis he draws the conclusion that the $1,000 was a payment in full. To offset the plaintiff's proof on that issue, defendant introduced in evidence the letters which were mailed to Zibilich's address and contended that these letters were received by him. Thus, we have a situation where there is a serious dispute that the attorney's fee, interest, and costs of court were due by Zibilich.

From these circumstances we find that the transaction between Zibilich and Rittenberg at the time the $1,000 was paid was for the purpose of ending, by mutual consent, their differences growing out of the suit that had been filed by Rittenberg against Zibilich, as one of the defendants. Consequently we have two elements necessary to bring the case within the provisions of article 3071 of the Civil Code defining a compromise agreement.

This article of the Code also requires that the contract be reduced to writing. Was the written receipt given by Rittenberg to Zibilich sufficient to say that the contract of compromise was in writing?

In the case of Kelly v. Homer Compress Co., 110 La. 983, 35 So. 256, 257, the plaintiff suffered personal injuries while in the service of the defendant and came to defendant's place of business for the purpose of seeking money. He signed a receipt for the sum of $25, acknowledging payment in full for the time he lost, medical expenses incurred on account of the injury received, and acknowledging that the injury occurred through no fault or negligence on the part of the defendant. Ten months thereafter he brought suit against the company for damages for personal injuries. The compromise settlement was pleaded in bar and plaintiff urged that it had been obtained through fraud. In deciding the case against the plaintiff, the court held:

"This was in settlement of whatever claim he had against the company.

"It was writing and as an agreement of compromise, for preventing a lawsuit and adjusting differences by mutual consent, meets the requirements of Civ. Code, art. 3071.

"Thereafter Kelly was without legal right to sue, and, having sued, the settlement referred to, made under the circumstances as detailed, could well be pleaded in bar of the action."

In that case the receipt was signed by the injured party, who sought to repudiate his compromise settlement and agreement. The court held that the receipt was sufficient written evidence of the compromise agreement and dismissed the plaintiff's suit. In the instant case the party signing the receipt is seeking to interpose it as a defense against the party who paid the

money. In short, the only difference between the two cases is that the position of the parties litigant is reversed. But we believe the legal effect to be just the same, because, if the receipt is binding against the party signing it, then it is likewise binding and entitled to full legal effect against the party who pays the money under it.

We, therefore, conclude that the agreement between the plaintiff and the defendant was a compromise settlement and agreement, in accordance with article 3071 of the Civil Code and the jurisprudence of the state interpreting that article.

Our Supreme Court has also held that, where an account has been closed and settled, the only method of maintaining a suit to the contrary is by alleging error or fraud in the settlement. Turregano v. Barnett, 127 La. 620, 53 So. 884; Heines & Peterson v. Prutsman, 162 La. 587, 110 So. 765.

In the present suit the plaintiff, Zibilich, does not make any claim that he signed the compromise settlement agreement through error or fraud. In fact, from the agreed statement of facts it appears that he was apprised of the legal situation and the facts in the case which obtained at the time that he paid the $1,000.

In Corpus Juris, vol. 12, at page 336, we find the following language:

"The law favors the compromise and settlement of disputed cases and will sustain such settlement if fairly made, because it is to the interest of the State that there should be an end to litigation."

In Young v. Barelli, 169 La. 319, 125 So. 258, 269, the court said:

"It is to the interest of the state that

litigation should cease, and courts will always look with favor on agreements and settlements looking to that end."

Now, having reached the conclusion that the transaction between the plaintiff and the defendant herein on February 5, 1929, is a compromise settlement and agreement between those parties in settlement of the litigation growing out of the plaintiff's indorsement of the note as collateral security on the lease, we know of no law which prevented Rittenberg, as lessor, from subsequently compromising and settling the remaining litigation between himself and the lessee. In fact, under the provisions of article 3076, R. C. C., Rittenberg, as creditor, was entitled to effect both of the compromise settlements with the surety first and the principal debtor subsequently.

Counsel for the plaintiff suggests that, as the attorney for the defendant was not specially authorized in writing to enter into and sign the compromise agreement, it is a nudum pactum.

Whatever informality there may have been with reference to the attorney's authority, the fact that the defendant, as principal, ratified and confirmed his agent's act by dismissing the original suit based upon the compromise, cured the defect.

In view of our conclusion on the defense of compromise, it is unnecessary for us to consider the second special defense that a voluntary compromise payment for the purpose of avoiding litigation is not recoverable when made through error of law.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of the defendant, dismissing the plaintiff's suit at his cost.